Reese, J.
delivered the opinion of the court.
William T. Ross is the administrator of Wm. D. Thompson deseased, who in the summer of 1834, intermarried with Susan S. Fain, the widow and relict of Samel Fain, deceased. Thompson in the early part of the year 1835 departed this life, leaving his wife surviving. Her first husband died intestate, and his widow and two infant children who survived him, were entitled to distribution of his personal estate, which was large, consisting then of twenty-four negroes and now of thirty or upwards, and of stock, household furniture &c., and debts due to him. Administration on his estate was granted to his widow, and to George R. Wharton, and the bill alledges that the former attended chiefly to the administration of the personal estate, that nearly all the debts had been paid, that the negroes remained upon the farm of the deceased, where lived the widow with her infant children, that they had never been divided up to the time of Thompson’s death and have not yet been, that the negroes were taken and held by the ad- *191 ministratrix as aforesaid, in the character of ... i i 1.1 i , until it was manliest that the same would not be required to pay debts, and that after that time she held the same undivided in her own right as tenant in common with said infant children, having the same in actual possession as aforesaid, and that upon the marriage of the said Wm. D. Thompson with the widow of Fain, he from that time till his death held the said negroes in his own right as tenant in common with the said two children, Undivided, having the same in actual possession, and being the absolute owner of his wife’s share in said negroes, and holding them for his own use and benefit and not as administrator. The bill also states that he had exchanged one or two of the negroes for others. The bill states that the widow of Thompson, and the guardian of the two children claim the negroes exclusively, and repel the claim of Thompson’s representative, the complainant, and prays that the negroes in specie may be delivered to complainant, and for an account. To the bill there was filed a demurrer which the chancellor sustained and decreed the bill to be dismissed, and the complainant by his appeal has brought the cause into this court. The enquiry now is, was there on the part of Thompson such a reduction into his possession of the distributive share of the wife in the negroes in controversy, as that the same shall not survive to her as administratrix of Fain, and as a distributee of his estate, but go to the personal representative of the husband ? In the threshold of the enquiry, it is conceded by the complainant in argument, that if the possession of Thompson in his life time, though actual, were only as trustee and administrator, his personal representative could not claim, but the wife would be entitled by survivor-ship. It is alledged however, that being both administrator and distributee, and having the negroes in actual possession,, it was in his power without suit, without division, or other positive act done, to claim and possess as distributee and owner,, and not as trustee and administrator; and to prove this we are referred to the case, first of an administrator who is a creditor of the estate upon which he administers. As to such a case it is said that all whose debts are of higher grade can compel payment, bnt as against all of equal or inferior grade he is en *192 titled to Ills retainer, Toller 295, which is said to arise from operation of law and from the necessity of the casej being unable to sue himself, and therefore that the property taken as administrator is changed and by force of law vested in him as owner. But does the analogy apply to the case before us? Here the suit was for creditors and for the other dis-tributees. Could he not if the creditors had been paid, sue the distributees, if unable from infancy to adjust the matter and have a division and enjoy his distributive share in severally? The creditor who is administrator cannot sue himself to ascertain his debts and have execution of the assets, he must therefore retain, and the property or rather the proceeds of it by operation of law becomes his own.
But the administrator who is aho the co-distributee of others, is subjected to no such necessity. To make anything of the analogy insisted on, a case must be selected where the administrator is sole distributee, as the father who administers upon the estate of an unmarried son, or the husband to recover the choses in action of his deceased wife. In such case, exceptas to creditors, the administrator would be owner, and debts being paid, could by operation of law and without suit claim as such. And second, it is said that though for two years after administration granted, the administrator would be pi esumed to hold in that character, yet after two years the presumptions oflaw are reversed, and he-is to betaken to have held as distributee. This legal postulate we do not think is established by the cases referred to for that purpose. 4 Mason 136: 6 Yer. Bosly vs. Carroll. These were cases where the administrator having also become guardian and being himself liable in both characters, his securities in the latter character, and not in the first, were held liable; not upon a presumption arising from operation of time merely, but from the act done, tbe assumption of guardianship and giving bond. It would be very unsafe on the ground of such presumption to permit a trustee receiving and holding property in that character, to denude himself of the trust by the supposed operas tions of his own mind and will, and without any positive act done to apprise all interested of such a change of character. But it is said again that a distributive share may he assimilated *193 to legacies, in which case the assent of the executor being necessary to the legacies, he may assent to his own, and that assent may be either express or implied. Toller 345.
The assent ofan executor is necessary to give to the legatee a title to claim and receive the legacy, because he is supposed to be acquainted with the state of the debts and the assets, and to know whether the legatee will be called on for contribution ■or not. But a distributive share is very unlike a-legacy, and if it were not, we would say similis non est idem. When was it ever heard in the same sense, that an administrator assented to a distributive share. A legacy is the gift of the testator, a distributive share of the law-, and if there be any resemblance between them, it is between a distributive share and ■a general residuary legacy, after the payment of all debts ■and all other legacies, in which last case it would be difficult perhaps to find much on the subject "of the executor’s assent in behalf either of himself or others. We think the authorities prove, that a possession such as Thompson had in this case, cannot be regarded as a reduction of the property of the wife into possession so as to defeat hep title by survivorship. In the case of Baker vs. Hall, 12 Ves. Rep. Hall was sole ex ecutor, and having proved the will, he entered upon and took possession of the real and personal estates of the testator, and afterwards disposed of part thereof. He married Elizabeth Baker one of the residuary devisees under the will, and died leaving her surviving; and one question in the case was whether Hall by entering into possession of the real and personal es-tateof the testator, as the only acting executor and trustee under the will, and disposing of part, had sufficiently reduced into possession his wife’s share, so as to give him an absolute title transmissible to his representatives. And as to that question the master of the rolls said, “the-husband must be considered to have entered into possession of the real and personal estate of the testator, as trustee and executor of the will only, and not as husband, and therefore his wife’s share of the residue would not be deemed sufficiently reduced into possession so as to prevent its surviving to her upon his dec ease.”
And in a case in 16 Ves. 415, it was determined, that the actual transfer of stock standing in the name of the wife to the *194 husband, but transferred to him as trustee for the wife, wouldnot , . . . , , , . the wile’s tule by survivorship* and upon the ground that the transfer was made diverso intuitu.” The case of Wallace vs. Taliferd, 2 Call’s Rep. establishes the same point. That ■was a case of a will and a legacy of slaves to a'married woman afterpayment of debts, and the husband was appointed executor and died. It was decided that the property which was negroes, survived to the wife. The case in 3 Des. Rep. 155, Elms vs. Hughes, is very strong to the same point. Indeed that case is identical with the case before the court. That >vas a case where one dying intestate, left a widow and children, a plantation and negroes. The widow administered, and then married a second husband. The family remained on the plantation, the negroes were in the actual possession of the husband. He died and his personal representative claiming adversely to the wife's survivorship, the chance/lor said, “it is insisted that the right of the wife to a third part of the personal estate was not a chose in action, it was a right to an undivided portion of negroes actually in possession, that the writ of partition which was necessary was merely to divide property in possession, and this was totally different from a chose in action.” To this objection the chancellor replied that “as a writ of partition was necessary to divide the personal estate to enable Mr, Elm’s to hold his wife’s share as husband, and as whenever a suit is necessary to establish or to give effect to a right, it is a right of action, and as Mr. Elms died before his wile, the right and the possession was not so vested in Mr. Elms, as husband, as to establish his property in the personal estate, but the same survived to his widow.” This opinion of the chancellor was unanimously affirmed upon appeal by the appellate court.
It is true as was determined in the case in 1 Yer. Rep. 413, that administrators, who are also distributees, are not under all circumstances to bring suit for petition or distribution, but they and the other distributees may agree upon and adjust the terms of settlement among themselves. But iii the cases in South Carolina, and in this case, that could not be done. Here were infants of tender years and without guardians, so far as appears; at least the partition was not in fact made, and it is *195 believed it cobld not have.been except by suit*, in the , . - , . rI.„ ' . tion and circumstances ot the parties. Ibe case- . ¡ , many other considerations tending to show the invalidity of the claim set up by the complainant. Why is it confiaed_tO-_ the negroes? Was not the stock, household.írniture and debts collected, in the same manner in the acial possession of tbe'administratí/íy JTJanuj oso» ? Did he hoF'that portion of his wife’s distributive share as administrator and the negroes only diveroO intuilu? Did he by the operation of his own assent, mind, or will, denude himself of the trust pro lanto only and as respects the claims, while his fiduciary character as to the balance of the property continued? And what effect had his supposed determination to claim for himself upon the title of the negroes? Did he continue to hold-he entire legal estate and an interest only as to two thirds for the children? Is it not obvious, now, that the character of the possession, &nd the relations of the parties were such, that relief could not lie given to the complainant by partition and delivery of one-third of the negroes in specie, but that the whole personal estate, and the entire marshalling of assets wild necessarily, if complainant were entitled, constitute a subject of "enquiry?
And finally, it is said for complainant that whatever may turn out to be the rights of the parties upon investigating the facts, yet the demurrer looks to the allegations of the bill, and cannot be sustained, because the bill alleges that Thompson held the negroes undivided for his own use and benefit, as io one third, and not as administrator. The bill states that the ne-groes of the estate of Fain all continued upon the farm, where also lived the widow and children, that they were taken and held by the wife as administratrix-. Circumstances and relations with regard to the property and the parties, are stated in the bill, inconsistent with the averment, that Thompson held an undivided third part for his own use and benefit, and not as administrator. No act is alleged to have been done, no fact is averred* the operation of which in point of law could control or ch tnge the circumstances and relations with regard to the parties and properly which previously existed. Certainly the alleged exchange of one or two of the negroes for others could not have that- effect.' We thiede,-''therefore, that the de *196 murrer to the hill was properly sustained by the chancellor,- and-we affimfijis decree.
Decree affirmed.